763 So.2d 644 (1999)
Glenn BROUSSARD and Mary Broussard
v.
Raili RAZDEN, Value Rent-A-Car, Inc., and Farmers Insurance Exchange.
Crawford & Company
v.
Glenn Broussard, Mary Broussard, and Value Rent-A-Car.
Nos. 98 CA 2577, 98 CA 2576.
Court of Appeal of Louisiana, First Circuit.
December 28, 1999.
*646 Alton B. Lewis, Hammond, LA, Attorney for Plaintiffs-Appellants Glenn Broussard, et al.
*647 E. Kelleher Simon, Covington, LA, Attorney for Defendant-Appellee Allstate Insurance Company.
C. David Vasser, Jr., Metairie, LA, Attorney for Defendants-Appellees Raili Razden and Farmers Insurance Exchange.
BEFORE: CARTER, C.J., LeBLANC, AND PETTIGREW, JJ.
PETTIGREW, J.
The instant suit was filed by Mary Broussard to recover for personal injuries she sustained as a result of an automobile accident on August 12, 1990. Joining with her in this suit was her husband Glenn Broussard, who sought to recover for lost consortium, services, and society. Following a jury trial, a verdict was rendered in favor of Mary Broussard awarding damages in the amount of $8,005.00 and denying any damages to Glenn Broussard. Due to credits to which the defendants were entitled, the trial court rendered judgment in favor of the defendants, and assessed all costs to the Broussards. From this judgment, the Broussards have appealed. For the following reasons, we reverse in part, amend, and as amended, affirm.

FACTS AND PROCEDURAL HISTORY
On or about August 12, 1990, Mary Broussard was operating her vehicle, owned by her and her husband, and was hit from the side by a vehicle operated by the defendant, Raili Razden, and owned by defendant, Value Rent-A-Car, Inc. Mrs. Broussard sought medical treatment five days after the accident from Dr. Roch Hontas. Subsequently, she was treated by several orthopedic surgeons and underwent various surgeries to her left knee. On August 7, 1991, Mrs. Broussard and her husband, Glenn Broussard, filed suit naming the following defendants: Raili Razden ("Mr.Razden"), Value Rent-A-Car, Inc. ("Value"), and Farmers Insurance Exchange ("Farmers"), as the liability insurer for Mr. Razden and Value. Subsequently, the plaintiffs filed an amended petition naming their own insurer, Allstate Insurance Company ("Allstate"), under its uninsured/underinsured motorist provisions. Ultimately, it was determined that Value was self-insured up to $10,000.00 and was the insurer for the defendant, Mr. Razden, with Farmers being an excess insurer.
A companion suit was filed by Crawford & Company (the underwriter of the Crawford & Company Employee Medical Benefit Plan) against Glenn Broussard, Mary Broussard, and Value, seeking reimbursement for payments made to the Broussards for medical treatment. This suit, bearing Docket No. 9403553, of the 21st Judicial District Court, Parish of Tangipahoa, was filed December 5, 1994, and was consolidated with the Broussards' original suit, Docket No. 9102337 on February 3, 1995. In addition, Crawford & Company subsequently intervened in the Broussards' original suit.
Prior to the trial of this matter, the Broussards entered into a settlement with Value, and by partial motion to dismiss and judgment of dismissal signed December 15, 1993, Value was dismissed with prejudice, reserving to the Broussards the right to proceed against any and all other parties in this litigation. Furthermore, Crawford & Company filed a voluntary motion to dismiss without prejudice, dismissing its original action in Docket No. 9403553 and intervention in Docket No. 9102337. Said order of dismissal without prejudice was signed December 10, 1997.
When this matter proceeded to trial on December 9, 1997, the only remaining defendants were Mr. Razden, Farmers, and Allstate. At the beginning of the trial of the merits, the following items were stipulated to by the parties: 1) That Mr. Razden was the sole fault and cause of the automobile accident with Mrs. Broussard. (There was no stipulation regarding medical causation.) 2) That the insurance available to Mr. Razden on his vehicle *648 through Value had a limit of $10,000.00, that the plaintiffs had settled with Value for said sum, and that any monies previously received by the plaintiffs from Value would be credited against any verdict that the jury may render in favor of the plaintiffs against the remaining defendants. 3) That the next layer of coverage of liability insurance was afforded by Farmers in the amount of $25,000.00 and that behind Farmers, Allstate's underinsured motorist coverage had a limit of $100,000.00. 4) That property damage was no longer an issue, nor was the lost wage claim. The parties also stipulated that the consolidated subrogation case was to be dismissed because it was to be litigated in Federal Court. Thus, the only issues for the trial court to decide were medical causation and the actual injuries and damages sustained by the Broussards.
The evidence adduced at trial revealed the following regarding Mrs. Broussard's medical condition. Mrs. Broussard injured her left knee while participating in organized sports in high school in 1970 and 1971. She had problems off and on for years until 1979, when she underwent arthroscopic surgery to the left knee. The problems with her left knee persisted, and in 1980, she underwent an open medial meniscectomy. Subsequently, Mrs. Broussard became active again in her personal activities, and although she suffered from periodic aches, she had no real problems with the knee. In 1987, she suffered a flare-up to her left knee and was conservatively treated by Dr. Robert McAfee. She returned to Dr. McAfee in 1988 for a second flare-up and was again treated conservatively. According to the record, Mrs. Broussard received no further medical treatment from any doctor or physician from 1988 until August 12, 1990, when she was involved in this accident.
Five days after this accident, Dr. Roch Hontas began treating Mrs. Broussard conservatively for problems with her left knee. In April of 1991, Dr. Hontas performed an MRI, and he continued conservative treatment of Mrs. Broussard's knee. He again treated her in August of 1991 for the left knee due to a flare-up. Mrs. Broussard saw Dr. Charles Strange in 1992, who subsequently performed arthroscopic surgery on Mrs. Broussard's left knee and found plica in the knee joint. Again, problems arose with Mrs. Broussard's knee in June of 1993, and she was treated by Dr. Michael Brunet. She later returned to see Dr. McAfee, and in September of 1993, Dr. McAfee performed another arthroscopic surgery, wherein he removed more plica, shaved the softened cartilage on the undersurface of her kneecap and noted chondromalacia.
After hearing all of the evidence, the jury rendered the following verdict:
VERDICT FORM
1) Do you find by a preponderance of the evidence that the plaintiff, Mary Broussard, was injured in the subject accident?
Yes X No ______
(If your answer to this question is "Yes," then proceed to question number. 2. If your answer to this question is "No," then sign this form and return to the courtroom.)
2) What amount of damages do you award to Mary Broussard?

Past medical expenses 4,005.00
 --------
Past physical pain and suffering 2,000.00
 --------
Future physical pain and suffering 0.00
 --------
Past mental anguish and inconvenience 2,000.00
 ________
TOTAL 8,005.00
 ________

3) Do you find by a preponderance of the evidence that Glenn Broussard sustained damages for loss of consortium as a result of the injury to Mary Broussard?
Yes ______ No X 
(If your answer to question number 3 is "Yes," then proceed to question number 4. If your answer to question number 3 *649 is "No," sign this form and return to the courtroom.)
4) What amount of damages, if any, do you award to Glenn Broussard for loss of consortium?
 $________________
Amite, Louisiana, this 11 of December, 1997.
 Terry K. Benoit 
 FOREPERSON
The total award of damages rendered by the jury was $8,005.00. Pursuant to the verdict form and the prior settlement and stipulation between the parties whereby the defendants would be entitled to a credit for the $10,000.00 received by the plaintiffs from Value, the court rendered a judgment on January 6, 1998, in favor of the defendants dismissing the plaintiffs' suit with prejudice at plaintiffs' cost. Thereafter, the plaintiffs filed a motion for a judgment notwithstanding the verdict, which was denied by the trial court on May 26, 1998.
From the trial court's judgments of January 6, 1998, and May 26, 1998, the plaintiffs have appealed, assigning the following specifications of error:
1. The trial judge erred in giving to the jury defendants' Special Requested Jury Instruction no. 23 (sic, actually 13).
2. The trial judge erred in entering Judgment against the plaintiffs and in favor of Racki Razdan [sic] and his insurer when liability had been stipulated and the jury found that Mary Broussard had been injured as a result of the accident.
3. The trial court erred in granting the plaintiffs inadequate medical expenses incurred.
4. The trial court erred in granting to the plaintiffs inadequate general damages for the injuries sustained.
5. The trial court erred in failing to award Glenn Broussard damages for loss of consortium.
6. The trial court erred in assessing all costs to the plaintiffs when liability was stipulated and when the jury found that Mary Broussard was injured as a result of the accident.

JURY INSTRUCTIONS

(Assignment of Error Number 1)
In their first assignment of error, the plaintiffs raise the issue of an inappropriate jury charge, arguing that the trial judge erred in giving the jury defendants' special requested jury instruction No. 13.[1] Louisiana Code of Civil Procedure article 1793 outlines the procedure by which objections to the proposed jury instructions are to be made and provides, in pertinent part, as follows:
A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
In the instant case, we must first determine whether the plaintiffs properly *650 preserved their objections to the alleged improper jury instruction. The trial transcript reflects that when the trial court informed the party litigants that he was going to give the above charge, the plaintiffs objected to the instruction and stated their reasons for the objection. We find this objection sufficient to preserve their right to appeal the trial court's giving of this instruction.
Having found that plaintiffs properly preserved their objection to the proposed jury instruction, we must now determine whether the trial court gave an erroneous instruction. A trial judge has a duty to charge the jury as to the law applicable in a case. Haydel v. Hercules Transport, Inc., 94-1246, p. 17 (La.App. 1 Cir. 4/7/95), 654 So.2d 418, 429, writ denied, 95-1172 (La.6/23/95), 656 So.2d 1019. Adequate jury instructions are those that fairly and reasonably point up the issues presented by the pleadings and evidence and provide correct principles of law for the jury's application thereto. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 36 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, 488, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. It is the trial judge's responsibility to reduce the possibility of confusing the jury, and he (she) may exercise the duty to decide what law is applicable. Sparacello v. Andrews, 501 So.2d 269, 277 (La.App. 1 Cir. 1986), writ denied, 502 So.2d 103 (La. 1987). An appellate court must exercise great restraint before overturning a jury verdict on a suggestion that jury instructions were so erroneous as to be prejudicial. Daigle v. Legendre, 619 So.2d 836, 839 (La.App. 1 Cir.), writ denied, 625 So.2d 1040 (La.1993).
The jury instruction that plaintiffs object to is as follows:
DEFENDANTS' REQUESTED CHARGE NO. 13
In order for Plaintiff to recover for any injuries which they [sic] alleged they [sic] received as a result of this accident, it is necessary that you find from the evidence that Plaintiff did not have such a condition prior to the accident; it is necessary that she show by a preponderance of the evidence that her prior condition was not the cause of her alleged condition after the accident.
When it is shown that a claimant is suffering from ailments before an accident, and it is alleged that the accident aggravated these previous disorders and caused suffering and disability, you must determine the extent to which the accident caused such suffering and the extent to which such ailments were related to and caused by the previous condition, for in assessing damages you may only consider that extent of suffering directly caused by the accident and the Defendant is not responsible for suffering caused by ailments which existed before the accident.
When read alone, the above jury instruction may be inadequate. However, we are compelled to read this jury instruction along with the jury instructions as a whole. The pertinent portion of the jury instructions given by the trial court in the instant case is as follows:
The parties stipulated that Defendant, Raili Razdan [sic], was negligent in this case, and thus you may accept that fact as true. But this is only one of the elements of Plaintiff's case, and I have previously told you that in order to be successful, the Plaintiff must establish all the essential elements of this case. The other elements are the following:
1) That the injury the Plaintiff suffered was, in fact, caused by the conduct of the Defendant; and
2) That there was actual damage to the Plaintiff's person or property.
As to the requirement that Plaintiff's injury be caused by Defendant's conduct, I do not mean that the law recognizes only one cause of any injury, consisting of only one factor or thing, or the *651 conduct of only one person. On the contrary, many factors or things may operate at the same time, either independently or together, to cause injury or damage. You should resolve this question by deciding whether Plaintiff would probably not have suffered the claimed injuries in the absence of Defendant's conduct. If Plaintiff probably would have suffered those injuries regardless of what the Defendant did, then you must conclude that the injuries were not caused by the Defendant, and render a verdict for that Defendant. If, on the other hand, Plaintiff probably would not have suffered the claimed injuries in the absence of Defendant's conduct, then you must conclude that Defendant's conduct did play a part in Plaintiff's injuries and you must proceed to the next element.
In order for Plaintiff to recover for any injuries which they alleged they received as a result of this accident, it is necessary that you find from the evidence that Plaintiff did not have such a condition prior to the accident; it is necessary that she show by a preponderance of the evidence that her prior condition was not the cause of her alleged condition after the accident.
When it is shown that a claimant is suffering from ailments before an accident, and it is alleged that the accident aggravated those previous disorders and caused suffering and disability, you must determine the extent to which the accident caused such suffering and the extent to which the such [sic] ailments were related to and caused by the previous condition, for in assessing damages you may only consider that extent of suffering directly caused by the accident and the Defendant is not responsible for suffering caused by ailments which existed before the accident.
In your consideration of the items of damages, you should bear in mind that under the law, the one liable or responsible for an accident must take the injured person as he or she finds him or her, and is responsible for all the natural and probable consequences of his or her wrong, even though they are more serious or harmful by reason of a preexisting condition, physical defect or weakness of the injured person. If the accident results in aggravation of a previous condition of disability or of pain of the injured person, the one responsible is liable for both the aggravation of the pre-existing condition and for any new injuries resulting from the accident.
However, Plaintiff must prove:
(1) The prior existing condition; and
(2) The extent of the aggravation.
If you find that the Plaintiff would have faced this aggravation of his or her condition whether this incident happened or not, then Plaintiff is not entitled to damages or that portion of his claim, since the Defendant is not responsible for the normal and natural results of the Plaintiff's prior condition.
The Defendant's liability for damages is not lessened by the fact that the Plaintiffs pre-existing physical infirmity was responsible in part for the consequences of the Plaintiff's injury by the Defendant. It is clear that a Defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.
We have thoroughly reviewed the record in this matter and conclude that the overall jury instructions given by the trial court were adequate instructions that fairly and reasonably point up the issues presented by the pleadings and evidence and provide correct principles of law for the jury's application thereto. See Belle Pass Terminal, Inc., supra. Thus, plaintiffs' first assignment of error is without merit.

DAMAGES

(Assignments of Error Numbers 3, 4 and 5)

Medical Expenses
After finding that Mrs. Broussard was injured in the accident in question, the *652 jury awarded her medical expenses in the amount of $4,005.00. On appeal, plaintiffs complain that this award was inadequate. According to the record, the plaintiffs introduced medical bills totaling $15,249.61 for medical treatment Mrs. Broussard allegedly underwent following this accident. The issue of causation was hotly contested by the parties, as was Mrs. Broussard's medical history.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. The plaintiff must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759. A tort-feasor is liable only for damages caused by his negligent act. He is not liable for damages caused by separate, independent or intervening causes. Hence, the plaintiff has the burden of proving that her injuries were not the result of separate, independent, and intervening causes. Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1075 (La.App. 1 Cir.), writ denied, 542 So.2d 516 (La.1989) overruled on other grounds, Cosse v. Allen-Bradley Co., 625 So.2d 486, 489 (La. 1993).
It is well settled in our jurisprudence that a trial court's finding regarding causation is a factual finding and must be reviewed under the manifest error standard of review. Robling v. Allstate Insurance Company, 97-0582, p. 4 (La. App. 1 Cir. 4/8/98), 711 So.2d 780, 783. As an appellate court, we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Thus, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
A review of the medical testimony and evidence indicates that as early as 1979, Mrs. Broussard underwent arthroscopic surgery of her left knee for injuries sustained in a sporting event accident in the early 70s. In 1980, she underwent another surgery on the same knee. Mrs. Broussard had no significant complaints thereafter, until November 12, 1987, when she sought treatment by Dr. Robert McAfee for problems with the lateral aspect of her left knee. After conservative treatment, it appeared that her condition improved. However, she returned to Dr. McAfee on November 14, 1988, with more pain around the lateral aspects of her left knee.
After this treatment by Dr. McAfee in 1988, Mrs. Broussard received no further medical treatment until August 17, 1990, when she saw Dr. Roch Hontas for injuries she sustained in the accident in question. Mrs. Broussard complained of problems with the inside of her knee, the same area of her knee that was operated on in 1979 and 1980. Dr. Hontas found no swelling, no effusion, and no bruising, although Mrs. Broussard testified that she did have a bruise immediately after the accident. Dr. Hontas treated Mrs. Broussard conservatively and saw her September 6, 1990; October 11, 1990; December 18, 1990; and January 10, 1991. Because of Mrs. Broussard's persistent complaints and the occasional swelling of her knee, Dr. Hontas ordered an MRI in April 1991. The MRI did not reveal any acute abnormalities, and Dr. Hontas did not feel that Mrs. Broussard's condition warranted surgery.
Dr. Hontas saw Mrs. Broussard again on January 29, 1991, and August 6, 1991, at which time she complained of left knee *653 pain. In particular, in August of 1991, Mrs. Broussard mentioned that she had been active during the summer, swimming and biking. Mrs. Broussard's last visit with Dr. Hontas was September 3, 1991. Throughout his conservative treatment of Mrs. Broussard, Dr. Hontas felt that she was improving.
Mrs. Broussard did not seek medical treatment again until January 28, 1992, when she saw Dr. Charles Strange. Dr. Strange reviewed her medical records, and, on February 19, 1992, he performed arthroscopic surgery, which consisted of work on both the medial and lateral side of the knee. Dr. Strange also found plica in Mrs. Broussard's knee. By April 21, 1992, Dr. Strange felt that Mrs. Broussard could return to full activity. Mrs. Broussard returned to Dr. Strange on August 24, 1992, and indicated that she had been running in the sand and may have twisted her knee. Dr. Strange again saw her in December of 1992 and in January of 1993, at which time he thought she was doing "pretty well." Mrs. Broussard's last visit to Dr. Strange was on February 11, 1993.
Next, Mrs. Broussard saw Dr. Michael Brunet on June 10, 1993, who was suspicious that she might have had a further breakdown of the lateral meniscus due to degenerative changes. Dr. Brunet recommended an MRI. According to Dr. Brunet, he had difficulty linking medical causation to the accident in question. Dr. Brunet did not recommend surgery. In September of 1993, Mrs. Broussard returned to Dr. McAfee who performed arthroscopic surgery on her left knee.
The medical experts were at odds concerning the causation of the medical problems suffered by Mrs. Broussardsome attributing it to the accident in August of 1990, others attributing it to natural degenerative changes due to original surgeries in 1979 and 1980. After review of the record, we note that there were some inconsistencies in the testimony of Mrs. Broussard. Based on the responses by the jury to question numbers 1 and 2 on the verdict form, the natural conclusion that can be drawn is that they found that Mrs. Broussard was injured in the automobile accident of 1990. The injury consisted of either an aggravation of an existing condition or a new injury that required surgery and medical treatment, up until August of 1992 when Mrs. Broussard suffered a new injury.
After a complete review of the record and all medical evidence introduced, we cannot say that the jury was manifestly erroneous in awarding medical damages to Mrs. Broussard in the amount of $4,005.00. This award is consistent with the treatment by Dr. Strange through August 24, 1992, at which time Mrs. Broussard had reported to Dr. Strange that she injured herself while running in the sand. Therefore, assignment of error number 3 is without merit, and the findings of the jury regarding medical damages is affirmed.

General Damages
In assignment of error number 4, the plaintiffs contend that the general damage award was abusively low. According to the record, the jury awarded Mrs. Broussard $2,000.00 for past physical pain and suffering, nothing for future pain and suffering, and $2,000.00 for past and future mental anguish and inconvenience.
It is well settled that the trier of fact has much discretion in awarding damages. La. Civ.Code art. 2324.1. The standard for appellate review of general damages is set forth in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), wherein the Louisiana Supreme Court stated that "the discretion of the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." The appellate court's initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn, 623 *654 So.2d at 1260. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261. Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976).
According to the verdict rendered in this case, the jury found that in the accident on August 12, 1990, Mrs. Broussard was either injured or suffered an aggravation of a previous injury. Further, they apparently felt that this injury existed and lasted through the surgery conducted by Dr. Strange in February of 1992, and until August of 1992 when Mrs. Broussard sustained a new injury.
The record reveals that during this period, Mrs. Broussard saw Dr. Hontas at least nine times, including an MRI examination in April of 1991. During each of her visits to Dr. Hontas, Mrs. Broussard complained of pain and swelling to her knee. She also complained of a shoulder injury during some of her initial visits to Dr. Hontas. Subsequently, she was treated by Dr. Strange beginning in January of 1992, and underwent arthroscopic surgery on February 19, 1992, which required anesthesia. She again saw Dr. Strange in February and March of 1992, and by April 21, 1992, Dr. Strange felt that Mrs. Broussard could return to full activity.
This medical treatment, which lasted approximately one year and nine months, was causally related to the accident in question. During this period of time, Mrs. Broussard underwent arthroscopic surgery that required anesthesia and an MRI. Mrs. Broussard also suffered from constant nagging pain and aggravation with her knee.
As previously indicated, Mrs. Broussard was awarded the following in general damages: $2,000.00 for past physical pain and suffering, nothing for future physical pain and suffering, and $2,000.00 for past and future mental anguish and inconvenience. In light of the Youn decision, we have reviewed the particular injuries sustained by Mrs. Broussard in the accident and the particular effects that these injuries had on her. Regarding the jury's decision not to award any damages for future physical pain and suffering, this court concludes that there was ample evidence for the jury to find that any problems suffered by Mrs. Broussard in the future would be unrelated to any injuries caused by the accident of August 12, 1990, but rather, related to other intervening causes or natural degenerative changes from her initial surgeries in 1979 and 1980. However, based on our review of the evidence, we find that the jury's general damage award of $4,000.00 was so low as to constitute an abuse of discretion.
The record reflects that although the injuries did not have a drastic effect on Mrs. Broussard's life, they did substantially affect her daily living for approximately one year and nine months. She was in constant, aggravating pain and discomfort. The injuries prevented Mrs. Broussard from engaging in activities to the full extent that she enjoyed prior to the accident. Based on this evidence, we conclude that the jury abused its discretion in awarding only $2,000.00 for past physical pain and suffering and $2,000.00 for past and future mental anguish and inconvenience.
In determining the appropriate damages to award Mrs. Broussard, we have reviewed several cases in which the injured party suffered the same type of injuries and endured the same types of treatment. Mindful of Mrs. Broussard's injuries and the particular effects that they had on her, we find that an award of $9,500.00 would be the lowest reasonable award for past physical pain and suffering, and an award of $4,500.00 would be the lowest reasonable *655 award for past and future mental anguish and inconvenience, making the total award for general damages to Mrs. Broussard of $14,000.00. Accordingly, we raise Mrs. Broussard's general damage award to the lowest acceptable amount of $14,000.00.

Loss of Consortium
In assignment of error number 5, plaintiffs argue that the jury erred in failing to award Glenn Broussard damages for loss of consortium. In reviewing an award for loss of consortium, it is necessary to evaluate the elements that comprise a loss of consortium claim. "Consortium" means much more than sexual relations. The term also includes love and affection, society and companionship, support, aid and assistance, felicity, and performance of material services; e.g., uncompensated work around the home. La. Civ.Code art. 2315; Brungart v. K Mart Corporation, 95-0708, p. 9 (La.App. 1 Cir. 2/23/96), 668 So.2d 1335, 1341, writ denied, 96-0763 (La.5/3/96), 672 So.2d 686. Proof of any one of these components is sufficient for an award of consortium. Hollie v. Beauregard Parish Police Jury, 96-198, pp. 13-14 (La.App. 3 Cir. 8/28/96), 680 So.2d 1218, 1225. Whether a party is entitled to damages is an issue of fact. Thus, the jury's finding regarding damages for loss of consortium should not be reversed in the absence of manifest error. Breaux v. Wal-Mart Stores, Inc., 98-1035, p. 8 (La.App. 3 Cir. 4/6/94), 635 So.2d 667, 673, writ denied, 94-1098 (La.6/24/94), 640 So.2d 1347.
After reviewing Mr. Broussard's testimony, most of which consisted of statements regarding the pain his wife endured and the numerous doctors' visits that were required, we note that there was little evidence as to any losses he sustained. In fact, Mr. Broussard acknowledged that subsequent to the accident of August of 1990, he and his wife were still participating in many of the same activities that they had enjoyed prior to the accident. Mr. Broussard failed to carry his burden of proof. As such, there appears to be a reasonable basis for the jury's determination that he suffered no damages. Thus, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 6
In assignment of error number 2, the plaintiffs argue that the trial court erred in entering judgment against the plaintiffs and in favor of Mr. Razden and his insurer, when liability had been stipulated and the jury found that Mrs. Broussard had been injured as a result of the accident. In their final assignment of error, plaintiffs assert that the trial court erred in assessing all costs to the plaintiffs.
As previously noted, prior to the trial of this matter, the plaintiffs had settled with Value for their full policy amount of $10,000.00. A stipulation was entered at the beginning of the trial that Mr. Razden was at fault and the cause of any injuries sustained by the plaintiffs from the accident; that Farmers was the insurer of Mr. Razden over and above Value; that Allstate was the uninsured motorist carrier or underinsured motorist carrier of the plaintiffs and their coverage would apply behind Farmers; and that the defendants would be entitled to a credit for anything paid by Value. It was also stipulated that all policies were in full force and effect, and there was coverage. The only issue for the trial court was to determine if the plaintiffs sustained any injuries in the accident of August 12, 1990, the extent of those injuries, and damages for same.
The jury made a factual finding that Mrs. Broussard sustained injuries from the accident of August 12, 1990. The jury also assessed damages for these injuries. In a judgment signed January 6, 1998, the trial court rendered judgment in favor of the defendants, Raili Razden, Farmers Insurance Exchange, and Allstate Insurance Company, and against the plaintiffs, Mary and Glenn Broussard, dismissing the plaintiffs' suit with prejudice and at plaintiffs' costs. We feel this was an error. The *656 trial court should have rendered judgment in favor of the plaintiff, Mary Broussard, and against the defendants, Raili Razden, Farmers Insurance Exchange, and Allstate Insurance Company, subject to the credit of $10,000.00 previously paid by Value Rent-A-Car, Inc. Said judgment should have also reflected a judgment in favor of the defendants and against the plaintiff, Glenn Broussard, since he was not awarded any damages for his loss of consortium claim. Thus, we would amend the judgment to so reflect.
As to the assessment of costs, this is controlled by La.Code Civ. Proc. art. 1920, which provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Although a party cast in judgment should generally be taxed with costs, the trial court may assess costs of a suit in any equitable manner. Steadman v. Georgia-Pacific Corporation, 95-1463, pp. 14-15 (La.App. 1 Cir. 4/6/96), 672 So.2d 420, 428, writ denied, 96-1494 (La.9/20/96), 679 So.2d 440. Considering that the ultimate jury award was less than the amount settled for by the Broussards with Value, and that the defendants were entitled to a credit for the amount paid by Value, this court feels it was not an abuse of discretion for the trial court to assess all costs to the Broussards. However, because we are amending in part, and awarding increased damages in favor of Mrs. Broussard, we shall assess all court costs against the defendants, and amend the trial court's judgment in that respect.

CONCLUSION
For the above and foregoing reasons, we amend the trial court's judgment to reflect a judgment in the amount of $18,005.00 in favor of the plaintiff, Mary Broussard, and against the defendants, Raili Razden, Farmers Insurance Exchange, and Allstate Insurance Company, subject to the credit of $10,000.00 previously paid by Value Rent-A-Car, Inc. We render judgment in favor of the defendants and against Glenn Broussard. We reverse the trial court's assessment of costs to the plaintiffs and assess all court costs of this proceeding and the trial court proceeding to the defendants Raili Razden and Farmers Insurance Exchange. In all other respects, the judgment is affirmed.
REVERSED IN PART, AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The trial court incorrectly referred to this jury instruction as "No. 23." However, a review of the record and the briefs of the parties reveals that it was actually jury instruction No. 13.