RICKY CRAWFORD AND LISA CRAWFORD
v.
DIAMOND B. CONSTRUCTION, L.L.C, D/B/A DIAMOND B. CONSTRUCTION CO., INC., STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF X TRANSPORTATION AND DEVELOPMENT AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY
No. 2009 CA 0226.
Court of Appeals of Louisiana, First Circuit.
September 11, 2009.
Not Designated for Publication
JAMES D. "BUDDY" CALDWELL, Attorney General, MAYNARD K. BATISTE, Sr., Assistant Attorney General, Counsel for Defendant/Appellant, State of Louisiana, through the Department of Transportation and Development.
MICHAEL L. CAVE, Counsel for Plaintiffs/Appellees, Ricky and Lisa Crawford.
CHRISTOPHER MOODY, Counsel for Defendant/Appellee, Diamond B. Construction, L.L.C, d/b/a Diamond B. Construction, Inc.
Before: PETTIGREW, DOWNING, and GAIDRY, JJ.
GAIDRY, J.
In this personal injury action, the defendant, the State of Louisiana, through the Louisiana Department of Transportation and Development, appeals a jury verdict assessing it with 60% fault, as well as the ruling of the trial court denying its cross-claim for indemnification. The plaintiffs answered the appeal, seeking an increase in the allocation of fault to defendant and in the damages awarded by the jury. For the following reasons, we affirm.

FACTS
On Sunday, July 16, 2000, the plaintiff, Ricky Crawford, accompanied by his son, was driving his truck in the City of Hammond on the portion of Louisiana State Highway 51 known as North Morrison Boulevard. As the truck's front tire rolled over a manhole cover located on the roadway, the cover flipped up vertically and the truck's back tire fell into the manhole.[1] The resulting jolt caused the truck to partially rise in the air before dropping back down and coming to a stop. The impact dislodged the truck's rear axle and drift shaft and caused Mr. Crawford to hit his head on the roof of the cab. As a result, he sustained both personal injuries and property damage to his truck. His son was not injured.
After the accident, the manhole cover remained standing vertically in the manhole until the investigating police officer kicked it down flat. However, when the wrecker towing Mr. Crawford's vehicle drove over the manhole cover, it flipped back up and a crescent-shaped piece of metal popped out onto the road. After having his son retrieve the piece of metal, Mr. Crawford kept it in his possession.
At the time of the accident, Highway 51 was part of an ongoing asphalt overlay project, which was being performed by Diamond B. Construction, Inc. (Diamond B.), pursuant to a contract with the State of Louisiana, through the Department of Transportation and Development (DOTD). On July 14th, two days before the accident, Diamond B. personnel performed work to raise manhole covers on Highway 51. This work is necessary when there is a difference between the level of a roadway and a manhole, and entails placing an adaptor or riser ring into the manhole cover to raise it to a level flush with the roadway.
The piece of metal retrieved by Mr. Crawford at the accident scene was later identified as being a riser ring. Plaintiffs presented expert testimony at trial that this particular riser ring was defective because it consisted of only a half circle rather than a full circle, which could lead to instability and movement of the manhole cover. Plaintiffs expert opined that the accident was caused by the defective design of the riser ring. Additionally, both the DOTD project engineer in charge of the overlay project and DOTD's own expert concurred in the opinion that the use of such a crescent-shaped riser ring was unacceptable. According to the project engineer, state standards required a riser ring to consist of a full circle; the use of a crescent-shaped riser ring was not approved by DOTD.
Mr. Shawn Thigpen, the Diamond B. foreman responsible for the laying of the asphalt on Highway 51 testified that neither he nor anyone in his crew installed the riser ring found at the accident scene. However, Mr. Earl Gatlin, a DOTD inspector who worked on the project on July 14th, indicated that he was aware the manhole had developed a dip and was advised on that date that Diamond B. raised the manhole cover where the accident occurred. Although he did not see the work being performed, once he learned of it, he went to the manhole to inspect the work done by Diamond B. He testified he heard Diamond B. personnel complaining about the cost of the riser ring at that time. Mr. Gatlin then inspected and approved the work performed by Diamond B. He conducted the inspection without lifting the cover, to visually inspect the riser ring installed. Thereafter, barricades erected earlier in the day were removed, and the section of Highway 51 where the accident occurred was opened for traffic. This action was taken with the approval of DOTD inspectors.

PROCEDURAL BACKGROUND
On February 9, 2001, Ricky and Lisa Crawford filed a personal injury suit against Diamond B. and DOTD, seeking to recover for damages sustained as a result of the accident involving the manhole. Audubon Indemnity Company (Audubon), the liability insurer of Diamond B., was also named as a defendant. Thereafter, DOTD filed a cross-claim against Diamond B. for indemnification for all damages for which it was held liable as a result of the operations of Diamond B. This claim was based on an indemnification clause in the contract between DOTD and Diamond B.
Prior to trial, plaintiffs reached a settlement agreement with Diamond B. and Audubon and dismissed their claims against those parties. As part of the settlement, plaintiffs agreed to hold Diamond B. and Audubon harmless from any claims for contribution or indemnification asserted by DOTD. Although plaintiffs' claims were to be tried by jury, the parties agreed that the trial court would decide DOTD's cross-claim for indemnification.
Following a four-day trial, the jury returned a verdict finding DOTD 60% at fault and Diamond B. 40% at fault in causing the accident in question. The jury assessed total damages of $706,000.00, which were itemized as follows:

 Property Damages $ 7,000
 Past Medical Expenses $ 120,000
 Future Medical Expenses $ 75,000
 Past and Future Pain and Suffering $ 60,000
 Permanent Physical Impairment $ 75,000
 and Disability
 Past and Future Emotional and $ 50,000
 Mental Anguish and Distress
 Past and Future Loss of Enjoyment $ 25,000
 of Life
 Lost Wages $ 64,000
 Loss of Earning Capacity $ 75,000
 Economic Losses $ 155,000
 Loss of Consortium of Lisa Crawford $ -0-

In accordance with the verdict, the trial court rendered judgment in favor of plaintiffs and against DOTD for $706,000.00, subject to a reduction of 40% for the fault of Diamond B. DOTD filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on the grounds that the verdict finding DOTD to be 60% fault was clearly contrary to the law and evidence. The trial court rendered judgment denying the motion. In addition, the judgment also denied DOTD's cross-claim for indemnification and cast it with all costs. DOTD took a suspensive appeal, alleging the jury erred in its allocation of fault, the trial court erred in denying DOTD's motion for judgment notwithstanding the verdict, or alternatively, for a new trial, and the trial court erred in denying DOTD's claim for contractual indemnification from Diamond B. In an answer to the appeal, plaintiffs seek an increase in the percentage of fault allocated to DOTD, as well as increases in the awards for general damages, loss of future earning capacity, and loss of consortium.

ALLOCATION OF FAULT
The jury determined that DOTD and Diamond B. were both at fault in causing the accident in question, assigning 60% fault to DOTD and 40% to Diamond B. DOTD argues the jury erred in assessing it with any fault because there was no evidence it had custody or garde of the manhole cover, that it placed the riser ring in the manhole cover, or that it had actual or constructive notice of the defective riser ring. DOTD further contends the evidence reveals that Diamond B. was responsible for placing the defective riser ring in the manhole cover, and that doing so was neither required by the contract nor authorized by DOTD. In opposition, plaintiffs argue in their answer that DOTD should have been assessed with 100% fault, or in the alternative with no less than 90% fault.
The determination and allocation of comparative fault are factual inquiries that an appellate court will not disturb in the absence of manifest error. Trinh ex rel. Tran v. Dufrene Boats, Inc., 08-0824, p. 20 (La. App. 1st Cir. 1/22/09), 6 So.3d 830, 844, writs denied, 09-0406, 09-0411 (La. 4/13/09), 5 So.3d 166. In order to reverse a trier of fact's determinations, an appellate court must find from its review of the entire record that: (1) a reasonable factual basis does not exist for the trier-of-fact's findings; and (2) the record establishes that the findings are clearly wrong or manifestly erroneous. Ryan v. Zurich American Ins. Co., 07-2312, p. 7 (La. 7/1/08), 988 So.2d 214, 219. The issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the trier of fact's conclusion was a reasonable one. Further, where there are two permissible views of the evidence, the trier of fact's choice between them cannot be manifestly erroneous or clearly wrong. Adams v. Rhodia, Inc., 07-2110, p. 10 (La. 5/21/08), 983 So.2d 798, 806.
DOTD is not responsible for every accident that occurs on state highways, and is not a guarantor of the safety of travelers on a state highway or an insurer against all injury or damage which may result from defects in the highway. However, DOTD owes a duty to motorists to ensure that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Graves v. Page, 96-2201, p. 12 (La. 11/7/97), 703 So.2d 566, 571-72. Moreover, in situations where work is being performed on state highways by a contractor, DOTD may not contract away its responsibility to the general public to maintain the highways in a reasonably safe condition, regardless of its agreement with the contractor. See Robinson v. State, through Dep't of Transp. and Dev., 454 So.2d 257, 261-62 (La. App. 1st Cir.), writ denied, 458 So.2d 122 (La. 1984); Roberts v. State, through Dep't of Transp. and Dev., 576 So.2d 85, 88 (La. App. 2d Cir.), writ denied, 581 So.2d 685 (La. 1991). DOTD's duty to maintain state highways is non-delegable. See Robinson, 454 So.2d at 262; Woods v. State, through Dep't of Transp. and Dev., 37,185, p. 18 (La. App. 2d Cir. 8/14/03), 852 So.2d 1109, 1121, writ denied, 03-2584 (La. 11/26/03), 860 So.2d 1140; see also Ratliff v. State, through Dep't of Transp. and Dev., 02-0733, pp. 11-12 (La. App. 1st Cir. 3/28/03), 844 So.2d 926, 935-36, writ denied, 03-1739 (La. 10/10/03), 855 So.2d 350.
In the instant case, based on our review of the record, we find no merit in DOTD's contention that it cannot be found liable to plaintiffs since it did not own or have garde of the manhole. Garde, which may be divided between two persons or entities, is present when one has the right of direction and control over a thing and derives some benefit from it. Sutherland v. Hibernia Corp., 98-2273, p. 2 (La. App. 1st Cir. 11/5/99), 746 So.2d 294, 295. The fact that the manhole was located in a traffic lane of a state highway perhaps is not sufficient by itself to confer garde of the manhole on DOTD. Even so, there were additional circumstances present in this case that clearly indicate DOTD did in fact have custody or garde of the manhole at the time in question. The highway where the accident occurred was in the midst of an ongoing asphalt overlay project. Although the actual work was being performed by Diamond B. personnel, that work was subject to the inspection and approval of DOTD, which had inspectors present at the worksite for that purpose.
During the course of the overlay project, the manhole developed a dip. The DOTD project diary for July 14, 2000, two days before the accident, indicates that Diamond B. personnel raised manhole covers on that date. DOTD argues strenuously that raising manholes was not part of its contract with Diamond B. and it had not authorized any such work. Nevertheless, it is apparent this work was performed by Diamond B. in conjunction with the DOTD overlay project. Moreover, the testimony of Mr. Gatlin, a DOTD inspector, indicates he was well aware that the work was performed by Diamond B. In fact, upon learning of the work, he made a point of inspecting the work performed on the manhole cover, which he approved.
The evidence indicates DOTD had the final decision as to when to reopen the highway. When questioned about the procedure for reopening a road after the contractor has completed work for the day, the project engineer explained that DOTD first "make[s] sure everything is taken care of; if it's not safe  in other words, if the manholes are too high or the concrete is not cured enough, then we close the lane down and leave it closed until it's appropriate enough to open up the lane again." Given the degree of control demonstrated by these circumstances, we find DOTD clearly had garde over the manhole at the time in question.
Additionally, we find no manifest error in the jury's conclusion that DOTD was at fault in causing the accident. DOTD argues it was relieved of liability in this case because, under its contract with Diamond B., the latter had responsibility for the maintenance of traffic flow and highway safety measures. DOTD further contends it was not responsible for the accident because the contract did not require Diamond B. to raise the manhole covers and no authorization was ever obtained from it for Diamond B. to do that work. However, as we have previously noted, DOTD has a non-delegable duty to the motoring public to ensure that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. See Robinson, 454 So.2d at 262; Woods, 37,185 at p. 18, 852 So.2d at 1121. Thus, regardless of the terms of its contract with Diamond B., DOTD was not relieved of that duty, which obviously included the duty to inspect work performed by its contractor to ensure it was properly performed and posed no hazards or defects before the roadway was opened to the public.
The evidence presented at trial established not only that the riser ring placed in the manhole cover caused the accident, but that the crescent-shaped ring failed to meet DOTD standards, which called for a full circle. According to the project diary, DOTD had three inspectors on the worksite available to oversee and inspect the work of the five Diamond B. employees who raised the manhole covers. While the raising of the manhole covers may not have been authorized by DOTD, at least one of those inspectors, Mr. Gatlin, became aware that Diamond B. had performed that work. In fact, he actually inspected the raised manhole cover after completion of the work. At trial, he admitted that he had earlier stated at his deposition that it "looked perfect" and he thought it would hold. Nevertheless, he failed to observe the defective riser ring because he did not lift the cover to visually inspect it.
Moreover, it should have been immediately observable upon cursory visual inspection that the ring failed to meet DOTD standards, given its crescent, half-circle shape. The project engineer testified the use of such a ring was not approved by DOTD. Thus, if Mr. Gatlin had more thoroughly inspected the work by lifting the manhole cover, the defective ring should have been detected and the contractor made to remedy the situation. By failing to completely inspect the work performed by Diamond B., DOTD breached its duties to ensure that Highway 51 was reasonably safe and to remedy conditions creating an unreasonably risk of harm to motorists before allowing the highway to be opened to traffic.
Additionally, we find no merit in DOTD's contention that the jury erred in assessing it with fault since it had no actual or constructive notice of the defective manhole cover. The sole reason DOTD had no notice of this condition was its own negligence in failing to properly inspect the work performed by Diamond B. in raising the manhole cover.[2] Accordingly, since there is a reasonable factual basis in the record for the jury's determination, we are unable to say the jury was manifestly erroneous or clearly wrong in concluding DOTD was at fault in causing the accident.
We likewise find no manifest error in the jury's determination that Diamond B. also was at fault. In their answer, plaintiffs maintain the record is devoid of any evidence that Diamond B. placed anything in the manhole prior to the accident. They point out that there were no witnesses who actually observed the placement of the riser ring in the manhole cover. It is true that the foreman of Diamond B.'s asphalt crew testified that neither he nor anyone in his crew installed a riser ring in the manhole. However, his testimony further indicated he was not present when the manhole covers were raised on July 14th.
Plaintiffs also note their expert witness testified it was more likely than not that the defective riser ring was already in the manhole when Diamond B. raised the manhole covers on July 14th, two days before the accident. However, this expert qualified his testimony by indicating at one point that it was only "slightly" more likely than not that the riser ring was present before that date.
The DOTD project diary clearly indicates that Diamond B. was engaged in raising manhole covers on July 14th. Mr. Gatlin testified that, while he did not see the manhole cover in question being raised, he was advised that the riser ring was being installed. Upon receiving this information, he went to the manhole to inspect the work done on it. He stated he heard a Diamond B. employee complaining at that point about the cost of the riser ring.
In making its factual determinations, the trier-of-fact is charged with assessing the credibility of witnesses and, in so doing, is free to accept or reject, in whole or in part, the testimony of any witness. See Succession of Wagner, 08-0212, p. 19 (La. App. 1st Cir. 8/8/08), 993 So.2d 709, 722. After weighing and evaluating all of the evidence, a jury is free to accept or reject the opinions expressed by experts. Breitenbach v. Stroud, 06-0918, p. 14 (La. App. 1st Cir. 2/9/07), 959 So.2d 926, 936. Based upon its weighing of the evidence and credibility determinations, the jury reasonably could have concluded that Diamond B. was responsible for installing the defective riser ring in the manhole cover while it was raising manhole covers on July 14. The jury's conclusion that Diamond B. was at fault in causing the accident was a permissible view of the evidence. Thus, we cannot say the jury committed manifest error or was clearly wrong in this determination.
Having determined the jury was not manifestly erroneous in finding both DOTD and Diamond B. at fault in causing the accident, we will now consider the apportionment of fault between DOTD and Diamond B. In their answer to this appeal, plaintiffs complain the jury erred in assigning DOTD with only 60% fault. They contend DOTD should have been allocated 100% fault or, alternatively, no less than 90% fault.
In determining percentages of comparative fault, the trier-of-fact should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Further, in assessing the nature of the parties' conduct, various factors may influence the degree of fault assigned to each, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La. 1985). The trier of fact's determination of the allocation of fault is a factual finding that will not be disturbed in the absence of manifest error. Snearl v. Mercer, 99-1738, p. 25 (La. App. 1st Cir. 2/16/01), 780 So.2d 563, 582, writs denied, 01-1319, 01-1320, (La. 6/22/01), 794 So.2d 800, 801.
After reviewing the entire record, and considering the respective parties' conduct in light of the Watson factors, we cannot say the jury's allocation of fault in this case was clearly wrong or manifestly erroneous, although it chose to assess DOTD with a greater degree of fault than Diamond B. The jury obviously concluded that Diamond B. was responsible for placing the defective riser ring in the manhole cover, which created the unreasonably dangerous condition leading to plaintiffs' injuries. However, the work performed by Diamond B. was subject to the supervision and approval of DOTD through the inspectors present at the worksite for that purpose, and actually was inspected and approved by DOTD. Moreover, those inspectors were in a position to be more familiar with state standards relative to riser rings. The inspectors were also in a position to require that the work performed by Diamond B. be done properly and in accordance with state specifications before allowing the highway to be reopened to traffic. The DOTD inspectors failed to do so in this case.
Given these circumstances, the jury's allocation of fault was reasonable, especially since the fulfillment of the DOTD's duty to maintain state highways in a reasonably safe condition is paramount to the safety of the public. Cf. Robinson, 454 So.2d at 261. Thus, we find the jury's allocation of fault is supported by a reasonable factual basis and was not clearly wrong or manifestly erroneous. For these reasons, we find no error in the jury's findings and allocation of fault.
Finally, DOTD argues the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. Under La. C.C.P. art. 1811, a JNOV is warranted only when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes reasonable jurors could not arrive at a contrary verdict. Simoneaux v. Amoco Prod. Co., 02-1050, p. 11 (La. App. 1st Cir. 9/26/03), 860 So.2d 560, 567, writ denied, 04-0001 (La. 3/26/04), 871 So.2d 348. A trial court's refusal to grant a JNOV can be overturned on appeal only if it is manifestly erroneous. Peterson v. Gibraltar Sav. & Loan, 98-1601, p. 6 (La. 5/18/99), 733 So.2d 1198, 1203. In the instant case, since we have previously held there was a reasonable factual basis for the jury's findings, it is clear that the evidence did not point so strongly in favor of DOTD that the JNOV should have been granted. We find no error in the trial court's denial of the JNOV.
Further, we find no error in the trial court's denial of DOTD's alternative motion for new trial. The standard of review applicable to the denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. In re Succession of Theriot, 08-1233, p. 9 (La. App. 1st Cir. 12/23/08), 4 So.3d 878, 884. DOTD contends it was entitled to a new trial under La. C.C.P. art. 1972(1) since the jury's assessment of fault was clearly contrary to the law and the evidence. Its arguments in support of this motion basically consist of a reiteration of the case presented at trial. However, because we have already concluded the evidence in the record supports the jury's allocation of fault, we cannot say the trial court abused its discretion in denying DOTD's motion for new trial.

INDEMNIFICATION CLAIM
DOTD argues the trial court erred in denying its cross-claim for indemnification from Diamond B. because the contract for the overlay project contained a valid indemnification clause providing the contractor would indemnify DOTD for any claims resulting from Diamond B.'s operations as contractor. It asserts the denial of its indemnification claim constituted an impairment of its constitutional right to contract.
Since DOTD indicates in brief that it is not seeking indemnification for its own negligence, it is unclear exactly what it is seeking on appeal.[3] The judgment appealed by DOTD specifically reduced plaintiffs' recovery by 40%, the percentage of fault attributable to Diamond B. Thus, judgment was rendered against DOTD only for that portion of the damages attributable to its own negligence, which the jury determined to be 60%. Under these circumstances, the trial court properly denied the cross-claim for indemnification, since it had previously reduced the judgment by the percentage of fault attributable to Diamond B. DOTD's contentions to the contrary lack merit.[4]

QUANTUM
In their answer, plaintiffs contend the awards made for general damages and loss of earning capacity were an abuse of the jury's discretion and should be increased. Additionally, plaintiffs argue the jury erred in refusing to allow any recovery to Mrs. Crawford for loss of consortium.
The jury's determination of the appropriate amount of damages is entitled to great deference on appeal. La. C.C. art. 2324.1; Wainwright v. Fontenot, 00-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74. The role of an appellate court in reviewing such awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier-of-fact abused its discretion in making the award. Wainwright, 00-0492 at p. 6, 774 So.2d at 74.
In the instant case, the jury awarded a total of $210,000.00 for general damages, which was itemized as $60,000.00 for past and future pain and suffering, $50,000.00 for past and future mental anguish and distress, $75,000.00 for permanent physical impairment, and $25,000.00 for loss of enjoyment of life. Plaintiffs maintain these awards were abusively low considering that the accident caused Mr. Crawford to suffer herniated discs at the C5-6 and L4-5 levels of the spine, each of which necessitated a separate surgery and resulted in a whole body impairment of at least 10%. As a result, he has restrictions on prolonged standing and sitting, as well as weight limitations on lifting. Plaintiffs also claim Mr. Crawford ended up losing a part-time carwash business he had recently started because he could no longer keep it up due to his physical limitations. There was also testimony that Mr. Crawford has suffered major depression and anxiety disorders since the accident, requiring the use of anti-depressants for an extended period. Additionally, Mr. Crawford's treating rheumatologist testified in his deposition that he believed the trauma of the accident aggravated Crawford's preexisting ankylosing spondylitis, a condition involving inflammation and potential fusion of the vertebrae. Plaintiffs claim this condition was asymptotic prior to the accident.
A review of the record reveals that Mr. Crawford sustained serious injuries as a result of the accident, including both cervical and lumbar disc herniations. The cervical and lumbar surgeries he underwent afforded him some relief, but did not totally alleviate his pain. However, there was also medical evidence from which the jury reasonably could have concluded that not all of his neck and back problems and pain were attributable to the accident. The deposition testimony of his doctors indicated that he had significant arthritic and degenerative changes in his neck and back that preexisted the accident.
Moreover, Mr. Crawford himself testified that in the ten-year period before the accident, he visited a chiropractor for aches and pains approximately once or twice a month. It may be that, although he did not realize it at the time, his ankylosing spondylitis condition was responsible for those symptoms that prompted him to visit a chiropractor on a regular basis for that ten-year period. Thus, the jury reasonably could have rejected plaintiffs' claim that his ankylosing spondylitis condition was asymptotic prior to the accident, even though he was not diagnosed with the condition until after the accident occurred. The jury could have further concluded that some of the pain he continued to experience after the surgeries was attributable to this pre-existing condition rather than to the injuries sustained in the accident.
Considering the overall circumstances, we find no abuse of discretion in the general damages awards made by the jury, which totaled $215,000.00. While perhaps on the low end of acceptable awards, given Mr. Crawford's prior history, we cannot say the awards were so low as to constitute an abuse of discretion. See Wilson v. Transp. Consultants, Inc., 04-0334, pp. 8-9 (La. App. 4th Cir. 3/2/05), 899 So.2d 590, 598, writ denied, 05-0827 (La. 5/13/05), 902 So.2d 1025.
Next, plaintiffs contend the $75,000.00 award made for loss of earning capacity was abusively low. In support of this claim, they rely on the trial testimony of Patrick Planche, who was stipulated by the parties to be an expert in accounting and economic losses. Mr. Planche calculated Mr. Crawford's loss of earning capacity based on two different scenarios: first, if he was unable to work and did not qualify for a disability retirement; and, second, if he was able to take a disability retirement from his current job. In the first instance, he calculated the loss of earning capacity to be $1,184,000. However, if Mr. Crawford were able to take a disability retirement, Mr. Planche estimated his loss of earning capacity to be $803,000. Plaintiffs argue they are entitled to the latter amount since the estimate of Mr. Planche is uncontroverted.
At the time of the accident, Mr. Crawford was employed by the federal government as a property manager, a position that requires extensive driving. In fact, he was still employed in that position at the time of trial, although it was necessary for his employer to provide him with certain accommodations, such as a more comfortable vehicle and a lumbar support seat. Further, there was no lay or medical evidence indicating Mr. Crawford was disabled from continuing to perform his job or that he would become so in the future.
As previously noted, a jury is free to accept or reject the opinions expressed by experts based upon its evaluation of all the evidence. Breitenbach, 06-0918 at p. 14, 959 So.2d 926, 936. Under the circumstances of this case, the jury reasonably rejected Mr. Planche's estimates of loss earning capacity, since those estimates were based on the supposition that Mr. Crawford was disabled from continuing his employment, and chose to arrive at its own estimate. Accordingly, we find no abuse of discretion in the award made for loss earning capacity.
Finally, plaintiffs request that the trial court judgment be modified to grant an award to Mrs. Crawford for loss of consortium. The jury interrogatories indicate the jury concluded she was not entitled to recover for loss of consortium. Plaintiffs maintain Mrs. Crawford is entitled to $75,000 for this item of damages.
Loss of consortium encompasses more than sexual relations. The term also includes love and affection, society and companionship, support, aid and assistance, felicity, and performance of material services. Whether a party is entitled to damages for loss of consortium is an issue of fact. Thus, the jury's finding regarding damages for loss of consortium cannot be reversed in the absence of manifest error. Broussard v. Razden, 98-2576, 98-2577, pp. 14-15 (La. App. 1st Cir. 12/28/99), 763 So.2d 644, 655.
Initially, we note that while plaintiffs raised the issue in their answer, their brief contains absolutely no argument in support of their claim for an award for loss of consortium. Further, the record contains little evidence on the issue. A review of the testimony of Mr. and Mrs. Crawford reveals that Mr. Crawford is unable to participate in certain activities because of his health. However, their testimony related primarily to activities in which Mr. Crawford formerly engaged with his children, rather than with each other. Neither plaintiff testified directly that the injuries Mr. Crawford sustained have adversely affected their marriage or affection for each other. Although one of Mr. Crawford's doctors indicated that at one time medication taken by Mr. Crawford affected his sex drive, neither Mr. or Mrs. Crawford testified on that issue. Significantly, Mr. and Mrs. Crawford have had a child together since the accident.
The jury obviously concluded the accident did not cause a deterioration of Mrs. Crawford's relationship with her husband. This conclusion rested on the jury's weighing of the evidence and credibility evaluations. After reviewing the entire record, we find no manifest error in the jury's determination that Mrs. Crawford was not entitled to an award for loss of consortium. See Broussard, 98-2576, 98-2577 at pp. 14-15, 763 So.2d at 655.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. All costs of this appeal, in the amount of $7,216.28, are to be paid by the defendant-appellant, the State of Louisiana, through the Department of Transportation and Development.
AFFIRMED.
NOTES
[1] The manhole apparently was installed and owned by the City of Hammond. At trial, a copy of a permit obtained in 1965 by the City of Hammond from the Louisiana Department of Highways that purports to allow placement of the manhole on Highway 51 was introduced into evidence. However, the quality of the copy was so poor that it essentially was illegible. In any event, testimony to the same effect was also introduced.
[2] In brief, DOTD contends Diamond B. had notice of the unreasonably dangerous condition because of prior motorists' complaints, but failed to convey this information to DOTD. In support of this contention, it introduced evidence of two prior incidents, one involving tar on a motorist's vehicle and the other involving damages to a vehicle's tires caused by a manhole that was uneven with the roadway. However, we fail to see how either incident has any relevance to the notice issue raised herein. The tar incident bore no similarity to the present case, and the manhole incident involved a different manhole and entirely different circumstances.
[3] Louisiana Revised Statutes 3 8:2216(G)(1) prohibits any clause in a public contract by which a public body attempts to obtain indemnification for damages caused by the public body's own negligence. See Suire v. Lafayette City-Parish Consol. Gov't, 04-1459, p. 20 (La. 4/12/05), 907 So.2d 37, 53.
[4] In brief, plaintiffs contend the trial court erred in refusing to dismiss DOTD's crossclaim for indemnification on the grounds that it was prescribed. We note plaintiffs did not raise this issue in its answer to this appeal. This court has previously held that an answer to an appeal only operates as an appeal from those aspects of the judgment of which the answer complains. Lilly v. Allstate Ins. Co., 577 So.2d 80, 86 (La. App. 1st Cir. 1990), writ denied, 578 So.2d 914 (La. 1991). Regardless, in view of our conclusion that the indemnification claim was properly denied by the trial court, it is unnecessary to reach this issue.