CRAIN, J.
|2In this suit against an uninsured motorist insurer, the defendant appeals the trial court’s damage awards to the plaintiffs for economic loss and loss of consortium, while the plaintiffs appeal the denial of their bad faith claim seeking penalties and attorney fees. We affirm.
*209 FACTS AND PROCEDURAL HISTORY
Vickie Lemoine and her son, Payton Lemoine, were involved in an automobile accident on August 19, 2009, that, according to the parties’ stipulation, was caused solely by the fault of another motorist who was insured under a $500,000.00 single-limit liability policy. The claims against the other motorist, his employer, and his insurer were settled for a total of $495,000.00. Of those funds, Vickie received $440,000.00, her husband, Kenneth Lemoine, received $45,000.00 for loss of consortium, and Payton received $10,000.00. The parties further agreed that the Lemoines had uninsured/underin-sured motorist (UM) coverage with Allstate Insurance Company with policy limits of $100,000.00 per person and $800,000.00 per accident.
Vickie and Kenneth sought additional recovery under that UM policy as well as penalties and attorney fees based upon Allstate’s alleged failure to make an unconditional tender in violation of Louisiana Revised Statutes 22:1892 and 22:1978. The Lemoines stipulated that the amount in controversy for all of their claims against Allstate, except the bad faith claim, did not exceed $50,000.00. The parties also agreed that the recovery for the bad faith claim, if successful, would not exceed $50,000.00.
The claims against Allstate proceeded to trial where the evidence established that the accident occurred when an 18-wheeler jackknifed and struck Vickie’s vehicle. Shortly thereafter, Vickie began experiencing neck pain and dizziness and sought treatment with Dr. Jay Vega. An MRI revealed broad-based disc Rherniations at two levels, C5-6 and C6-7, and she was eventually referred to Dr. Najeeb Thomas, a neurosurgeon. After conservative care failed to provide any long term relief, Vickie underwent her first surgical procedure, a posterior cervical laminectomy and for-aminotomy, that was performed by Dr. Thomas on August 2, 2010, approximately one year after the accident. Following the first surgery, Dr. Thomas limited Vickie to medium-duty work with no lifting of objects heavier than 20 to 25 pounds.
Vickie testified that she did not experience any significant relief from the first surgery, so she pursued additional conservative care, including physical therapy and spinal injections; however, when that treatment likewise failed to provide significant relief, she underwent a cervical dis-cectomy and fusion at C5-6 and C6-7 on August 31, 2011. Her follow-up care with Dr. Thomas continued through January 8, 2013, when she was deemed to be at maximum medical improvement and was restricted to light duty work with limited looking up or down and a lifting restriction of 20 pounds. Dr. Thomas related Vickie’s disc injuries to the automobile accident, and she continued to experience neck pain through the time of the trial.
Vickie also experienced constant dizziness after the accident and was diagnosed with vertigo by Dr. Paul Gaudet, an otolar-yngologist, who related the vertigo to the accident. This condition persisted for about three years until resolving in 2012.
The parties stipulated that the medical expenses incurred by Vickie from the date of the accident through the trial total $139,938.08, although Allstate did not stipulate that these expenses were incurred as a result of the automobile accident.
The evidence established that at the time of the accident, Vickie owned and operated a tugboat business, H.P. Marine, L.L.C., which owned one tugboat. She was the only employee of the company and was responsible for loading supplies on |4the boat, tending to repairs, and ensuring that the necessary paperwork was com *210 pleted. She confirmed that it was a “physically demanding job” because of the packaging and loading of supplies for the boat. In 2008, she received $53,000.00 in income from the company; and in 2009, the year of the accident, she earned $45,000.00 in income through the date of her last check at the beginning of September, which equates to $5,625.00 per month, The company also paid the monthly notes for her vehicle and her husband’s truck in the respective amounts of $956.75 and $848.00, as well as Vickie’s automobile insurance, which at the time of trial was approximately $700.00 per month.
Following the accident, Vickie knew that her neck injury and vertigo prevented her from getting the boat ready for jobs, so she sold the boat in April of 2010, approximately 8 months after the accident. With no boat, the company had no source of income; so, according to Vickie, she was no longer able to earn her salary of $5,625.00 per month, nor was she able to receive her other benefits, namely the payment of the couple’s vehicle notes and insurance.
In support of the lost earnings claim, the plaintiffs introduced a report from a physical therapist, Donald Kinnard, who performed a functional capacity evaluation for Vickie in August of 2012 and concluded that it is unlikely that she would be able to tolerate the lifting and carrying tasks required for supplying a boat. Kinnard also stated that it is unlikely that Vickie would be able to tolerate extended sitting with her neck positioned for excessive reading. A vocational rehabilitation counselor, Thomas Meunier, evaluated Vickie and also issued a report in August of 2012 stating that Vickie was not capable of returning to her full duties as a tugboat owner, although she might be able to return to the job in some capacity if she hired additional employees to assist in the functions that she can no longer perform. Meunier also opined that Vickie had sustained a 20% loss of employment opportunity as a result of her injuries.
|fiIn defense of the lost earnings claim, Allstate countered with a report from Nancy Favaloro, a rehabilitation counselor who evaluated Vickie and concluded that it is likely that Vickie can return to work as a manager/owner of a tugboat company. Allstate also relied heavily on Vickie’s personal tax returns which reported significant losses for H.P. Marine, L.L.C. in 2009, 2007 and 2006. However, Vickie testified that the losses reported for the company were due to depreciation and the reinvestment of revenue into improvements in the tugboat, including new engines, extra parts, and basically rebuilding the boat.
With respect to the claim for penalties and attorney’s fees, the plaintiffs offered copies of the settlement drafts with the liability insurer together with three letters from plaintiffs’ counsel to Allstate’s counsel dated September 30, 2011, December 22, 2011, and May 30, 2012, respectively. The first letter relied upon the police report and Vickie’s deposition, medical records, and medical expenses as satisfactory proof of her loss in excess of the available liability insurance; however, the letter did not articulate or otherwise attempt to substantiate any claim for lost earnings.[1] The second and third letters provided updated medical records and invoices but again made no attempt to quantify or substantiate a claim for lost earnings, except for a brief mention in the third letter that Vickie “will likely have permanent medium to light duty restrictions” according to a re *211 port from Dr. Thomas. The letter did not assert that Vickie would be unable to return to her prior work, and her first evaluation by the vocational rehabilitation counselor was approximately two months later on July 28, 2012.
In opposition to the bad faith claim, Allstate contended that Vickie’s economic claim was reasonably disputed based upon Favaloro’s opinion that Vickie could return to work and because Vickie’s tax returns reflected consistent losses for H.P. Marine, L.L.C. Allstate also introduced Vickie’s answers to | (¡interrogatories provided on November 12, 2010, particularly relying upon an answer wherein Vickie stated that she had “not calculated the amount of lost earnings at this time” and had not retained an expert for that purpose.
The trial court took the claims under advisement and thereafter issued a ruling in open court awarding Vickie the total amount of $662,682.08. itemized as follows: (1) $300,000.00 in general damages for physical and mental pain and suffering (past and future), physical disability, and loss of enjoyment of life, (2) $137,682.08 for past medical expenses, and (3) $225,000.00 for past lost earnings. The trial court also awarded Kenneth the sum of $50,000.00 for loss of consortium but denied any relief to the Lemoines for the bad faith claims. A judgment was signed that reflected the rulings; and, in accordance with the parties’ stipulation, the judgment reduced Vickie’s total award against Allstate to $50,000.00, plus interests and costs.
As reflected in the oral reasons for judgment, the trial court was “very impressed” with Vickie and found that she had “suffered greatly.” In rendering its awards, the court focused on the approximate 40 month period between the accident in August of 2009 and Vickie’s final appointment with Dr. Thomas in January of 2013. The court found that “at no time during that period was she capable of returning to any meaningful employment” and awarded her $225,000.00, which is the product of 40 months times $5,625.00, the monthly amount of income claimed to be lost by Vickie.[2]
In rejecting the bad faith claim, the trial court explained:
In the instant matter there was a single limit [liability] policy of $500,000. And while I appreciate the argument of the Plaintiff, the facts of this case are such that absent some crystal ball on behalf of Allstate they would have had to have known the mind of the Court or 17of a potential jury. What I’m trying to say is that I cannot find that they acted in bad faith.
... I cannot find that they acted in a vexatious manner, that they were arbitrary or capricious, or that they were unwilling to explore the financial responsibilities on their policy.
The Lemoines moved for a new trial on the bad faith claim, which the trial court denied after a contradictory hearing, explaining:
Based on the income information not being completely delineated the Court still feels that the original judgment was correct, that there was no arbitrary and capriciousness and for that reason the Court is going to deny the motion.
Both parties appealed the judgment, with Allstate asserting that the trial court erred in awarding lost earnings to Vickie and made an excessive award to Kenneth *212 for his loss of consortium, while the Lem-oines contend that the trial court erred in denying their bad faith claim.
LAW AND ANALYSIS
A. Lost Earnings Claim
To recover for actual wage loss, a plaintiff must prove that she would have been earning wages but for the accident in question. Boyette v. United Services Automobile Assoc., 00-1918 (La.4/3/01), 783 So.2d 1276, 1279. It is the plaintiffs burden to prove past lost earnings and the length of time missed from work due to the accident. Boyette, 783 So.2d at 1279. The amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim, and such proof may consist only of the plaintiffs own testimony. Driscoll v. Stucker, 04-0589 (La.1/19/05), 893 So.2d 32, 53. The factfinder is accorded broad discretion in assessing awards for lost earnings, but there must be a factual basis in the record for the award. Driscoll, 893 So.2d at 53. An award for lost wages is subject to the manifest error standard of review because such damages must be proven with reasonable certainty. Boudreaux v. State, Department of Transportation & Development, 04-0985 (La.App. 1 Cir. 6/10/05), 906 So.2d 695, 705, writs denied, 05-2164 (La.2/10/06), 924 So.2d 174, and 05-2242 (La.2/17/06), 924 So.2d 1018.
Vickie testified that in 2009 she was earning $5,625.00 per month operating her tugboat company and that after the accident she was no longer able to perform the physical tasks required of the job, specifically the loading and unloading of supplies on the boat. Her monthly income was corroborated by her 2009 income tax return, and her inability to return to her employment was supported by reports from a vocational rehabilitation counselor and physical therapist. The trial court appears to have accepted the monthly income figure of $5,625.00 and arrived at a total loss of $225,000.00 based upon the 40 months Vickie was receiving medical treatment for her injuries.
Allstate primarily argues that the award was manifestly erroneous because Vickie’s tax returns reflect that H.P. Marine, L.L.C. reported a loss in 2009 and in several prior years. We first note that Vickie testified that the company was a self-sustaining business that never required any investment of her personal funds and was not on the verge of going out of business. She further confirmed that the reported tax losses were the result of depreciation and improvements to the boat. None of this testimony was contradicted by any evidence at trial.
Furthermore, as pointed out by the Lemoines, H.P. Marine, L.L.C. is a separate legal entity from its members. See La. R.S. 12:1301A(10) and (18); Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 11-2254 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598. Vickie is not pursuing a claim for any economic loss to H.P. Marine, L.L.C., nor can she pursue such a claim in her individual name. See Richard v. Morgan, 433 So.2d 263, 264 (La.App. 1 Cir.1983), writ denied, 438 So.2d 1108 (La.1983) (principal employee and shareholder of an incorporated business, who was injured in an accident, was not entitled to recover against the tortfeasor for the diminished value of the business due to the 19employee’s injuries); Mahfouz v. Ogden, 380 So.2d 646, 649 (La.App. 1 Cir.1979) (plaintiff, who conducted business in corporate form and reaped the benefits of incorporation, cannot sue individually for damages incurred by the corporation). By that same rationale, any financial losses by H.P. Marine, L.L.C. are not determinative *213 of whether Vickie sustained a personal loss of earnings when she was unable to work. While we recognize that H.P. Marine, L.L.C. is wholly owned by the Lemoines, the company’s reported tax losses do not disprove that Vickie was earning the claimed monthly income before the accident and that she lost that income as a result of the accident, particularly where the company was an ongoing concern that was not in danger of ceasing operations due to any financial difficulties before the accident.
Citing Vickie’s failure to introduce any business records for the company, Allstate relies upon Carter v. Baham, 95-2126 (La.App. 4 Cir. 10/09/96), 683 So.2d 299, for the proposition that an injured party should be required to present both personal and business records under these circumstances. However, in Carter, the plaintiff was a physician, and his claim for loss of past and future earnings rested upon the testimony of an expert economist who relied entirely upon the business records of the physician’s professional corporation. Carter, 683 So.2d at 306-307. The court recognized that without “a professional’s personal tax returns, a factfinder faces tremendous difficulty in evaluating such inherently speculative damages, which are at best, even when fully documented, insusceptible of calculation with mathematical certainty.” Carter, 683 So.2d at 307.
In the present case, Vickie did not rely upon the business records of H.P. Marine, L.L.C. to establish her lost earnings. Rather, she testified to the specific amount of income that she was earning before the accident. The plaintiffs own testimony can be sufficient proof to reasonably establish the amount of lost 1 ¶ nearmngs. Driscoll, 893 So.2d at 53. Further, Vickie’s testimony was corroborated by her personal income tax return for 2009.
Allstate also contends that Vickie’s lost earnings award should have been reduced by a $100,000.00 profit realized by the sale of the tugboat several months after the accident. However, the tugboat was an asset of H.P. Marine, L.L.C. Therefore, any profit from the sale of the tugboat accrued to the limited liability company as a separate entity and cannot serve to reduce Vickie’s personal recovery for lost earnings. Cf La. R.S. 12:1301A(10) and (18); Charming Charlie, Inc., 97 So.3d at 598; Richard, 433 So.2d at 264; Mahfouz, 380 So.2d at 649.
Allstate’s final contention is that Vickie failed to mitigate her damages by not determining if a part-time employee could be hired to obtain and load the supplies on the boat. An injured plaintiff has a duty to take reasonable steps to mitigate damages. Aisole v. Dean, 574 So.2d 1248, 1253 (La.1991). The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense. Ciolino v. First Guaranty Bank, 12-2079 (LaApp. 1 Cir. 10/30/13), 133 So.3d 686, 697. Although Vickie testified that she never thought about hiring someone to assist in the business, she also confirmed that she worked out of her house and that it would not have been feasible to continue to run the business if she had to obtain an office and incur the expense of a new employee, including payroll expense and taxes, workers’ compensation insurance, and an employee vehicle. Based upon this evidence, we find no manifest error in the trial court’s refusal to reduce Vickie’s recovery based upon an alleged failure to mitigate her damages.
B. Loss of Consortium
In its second assignment of error, Allstate asserts that the trial court abused its discretion by making an exces *214 sive award to Kenneth for loss of consortium. In reviewing an award for loss of consortium, it is necessary to evaluate the elements |nthat comprise a loss of consortium claim. Broimard v. Razden, 98-2576 (La.App. 1 Cir. 12/28/99), 763 So.2d 644, 655. The compensable elements of a claim for loss of consortium of a spouse include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity Ferrell v. Fireman’s Fund Insurance Company, 96-3028 (La.7/1/97), 696 So.2d 569, 573 n. 4. Proof of any one of these components is sufficient for an award of consortium. Broussard, 763 So.2d at 655. A loss of consortium award is a fact-specific determination to be decided on a case-by-case basis and is disturbed only if there is a clear abuse of discretion. Burrell v. Williams, 05-1625 (LaApp. 1 Cir. 6/9/06), 938 So.2d 694, 701.
Kenneth and Vickie have been married since 1992, and Kenneth testified about the impact that Vickie’s injuries and treatment have had on their relationship. Her condition has limited their ability to pursue activities as a family that they enjoyed before the accident, such as fishing, watching their son’s basketball games, or going out to eat. They own a camp in Grand Isle that was a focal point of their outdoor recreational activities prior to the accident, but after the accident Vickie basically has to remain inside the camp or on the dock because she cannot go fishing offshore or in the bays in their boat. Kenneth also described the difficulty of taking care of Vickie during her surgeries while balancing his full time job and tending to their children. Their love life diminished after the accident, and their marriage is still not what it was before the accident. As expressed by Kenneth:
Well, first of all, my family comes first, my wife and my children. And ... as this thing starting transpiring and the amount of visits and doctor visits [increased,] ... waking up at night, my wife in the middle of the night the room spinning not knowing what’s going on, her not being able to do the things she loved to do. It’s just effected (sic) us greatly-[Everything's changed, ... [but] you 112bear with it. You are family. You do whatever you got to do for your family.
[[Image here]]
Well, I’m a strong person and ... it’s hard for me to sit here and talk about this.... [A]t times as strong as you think you are ... you find yourself— emotionally you will break down and it’s really hard.
Based upon the evidence of Kenneth’s loss of consortium, the trial court did not clearly abuse its discretion in awarding Kenneth the sum of $50,000.00. Accordingly, this assignment of error has no merit.
C. Bad Faith Claim
The Lemoines assert that the trial court committed’ manifest error in failing to award penalties and attorney fees based upon Allstate’s failure to make an unconditional tender under the UM policy.
Louisiana Revised Statute 22:1892A(1) requires insurers to pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss, Section B(l) provides, in pertinent part:
Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the *215 loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater....
Louisiana Revised Statute 22:1973 imposes an obligation of good faith and fair dealing on an insurer, including the affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant. An insurer may be subject to penalties not to exceed two times the damages sustained or five thousand dollars, whichever is greater, if the insurer fails to pay a claim due an insured within sixty days of receiving satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause. La. R.S. 22:197SB(5) and C.
| isThe conduct prohibited by Section 22:1892A(1) is virtually identical to the conduct prohibited by Section 22:19736(5): the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. Reed v. State Farm Mutual Automobile Insurance Company, 03-107 (La.10/21/03), 857 So.2d 1012, 1020. The primary difference is the time periods allowed for payment. Reed, 857 So.2d at 1020. Both statutes are penal in nature and must be strictly construed. Reed, 857 So.2d at 1020.
One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. Reed, 857 So.2d at 1020. A “satisfactory proof of loss” is that which is sufficient to fully apprise the insurer of the insured’s claim. Louisiana Bag Company, Inc. v. Audubon Indemnity Company, 08-0453 (La.12/2/08), 999 So.2d 1104, 1119; McDill v. Utica Mutual Insurance Company, 475 So.2d 1085, 1089 (La.1985). To establish a “satisfactory proof of loss,” the insured must show that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, (2) that he was at fault, (3) that such fault gave rise to damages, and (4) establish the extent of those damages. McDill, 475 So.2d at 1089.
The sanctions of penalties and attorney fees are not assessed unless a plaintiffs proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. Reed, 857 So.2d at 1021. The phrase “arbitrary, capricious, or without probable cause” is synonymous with “vexatious,” and a “vexatious refusal to pay” means “unjustified, without reasonable or probable cause or excuse.” Louisiana Bag Company, Inc., 999 So.2d at 1114.
An insurer’s conduct depends on the facts known to the insurer at the time of its action, and penalties should not be assessed when the insurer has a reasonable | ubasis to defend the claim and acts in good-faith reliance on that defense. Louisiana Bag Company, Inc., 999 So.2d at 1114. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer’s failure to pay within the statutory time limits when such reasonable doubts exist. Reed, 857 So.2d at 1021. In those instances where there are substantial, reasonable, and legitimate questions as to the extent of an insurer’s liability or an insured’s loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause. Louisiana Bag Company, Inc., 999 So.2d at 1114.
*216 Whether a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Because the question is essentially a factual issue, the trial court’s finding should not be disturbed on appeal absent manifest error. Louisiana Bag Company, Inc., 999 So.2d at 1120: Reed, 857 So.2d at 1021.
Allstate contends that the Lemoines did not provide satisfactory proof of the extent of Vickie’s loss, specifically her claim for lost earnings, and that the decision not to make an unconditional tender was not arbitrary, capricious or without probable cause. In denying the Lemoines’ motion for new trial on the bad faith claim, the trial court found that Allstate had not acted arbitrarily in failing to make a tender because Vickie’s “income information” was not “completely delineated.” The lost earnings claim was strongly contested by Allstate, and much of the evidence presented at trial concerned that claim. As Allstate correctly points out, the trial court’s total damage award to Vickie and Kenneth, excluding lost earnings, did not exceed the underlying liability insurance coverage. The assessment of the lost earnings claim is thus a critical component in any evaluation of Vickie’s damages.
| ifiThe plaintiffs primarily rely upon the three demand letters as providing the necessary satisfactory proof of loss.; however, while those letters provide proof of Vickie’s medical treatment and related expenses, the letters make no mention nor provide any substantiation of her claim for lost earnings. Likewise, her responses to discovery, in November of 2010 indicate that although she had not returned to work, she had not calculated the amount of her lost earnings nor had she retained an expert in that regard.
The Lemoines argue that the tax returns provided during discovery were sufficient proof of loss because they include W-2 forms which indicate the salary paid to Vickie by H.P. Marine, L.L.C. However, according to Allstate, Vickie presented herself as “a self-employed earner” rather than an employee, and her tax returns produced during discovery reflected that H.P. Marine, L.L.C. was losing money.
While the tax returns do include W-2 forms, the discovery responses also represent that Vickie “was the managing member of two tugboat companies, HP Marine, L.L.C. and JC Towing L.L.C., and self employed” and that her “compensation varied depending on business and what was kept in the company.” (Emphasis added.) It is not clear from the discovery responses whether Vickie could continue to draw some or all of her salary from at least one of those companies and whether either company had the ability to utilize other personnel to continue operations without interruption. To clarify Vickie’s role with H.P. Marine, L.L.C., the plaintiffs rely on testimony presented at trial to establish that the company did not have other personnel available to load the boat, and that it was not feasible to hire someone to perform that task. However, in a bad faith claim, the insurer’s conduct is judged based upon the facts known by the insurer at the time of its action. See Louisiana Bag Company, Inc., 999 So.2d at 1114. Accordingly, information presented by the plaintiffs for the first time at trial is not Irrelevant for determining whether Allstate breached its duty' to make an unconditional tender under Louisiana Revised Statutes 22:1892A(1) and 22:1973B(5).
The only other evidence of “satisfactory proof of loss” provided to Allstate concerning Vickie’s ability to return to work consisted of the reports in August of 2012 from the vocational rehabilitation counselor and the physical therapist who *217 administered the functional capacity evaluation. While both of those reports concluded that Vickie’s return to her prior job would be unlikely, the vocational rehabilitation counselor stated that “it is difficult to determine [Vickie’s] precise loss of earning capacity” because she was a self-employed business owner. The counselor further concluded that Vickie “may be able to return to her past job as a tugboat owner, although she will likely need to hire additional employees” to assist her. Allstate also relied upon the report it obtained from Favaloro, the vocational rehabilitation counselor who, after interviewing Vickie and reviewing her medical records, concluded that it was likely that Vickie could return to work as a manager/owner of a tugboat company. Allstate further points to Dr. Thomas’s deposition testimony in August of 2011 wherein he confirmed that he and Vickie had not discussed her ability to return to her business or the requirements of that job. Dr. Thomas also testified that he believed that Vickie should have a good prognosis after her second surgery and should be able to do medium-duty work, including lifting 25 to BO pounds.
Considering all of the evidence presented in connection with the bad faith claim, the trial court did not commit manifest error in finding that Allstate did not act arbitrarily or capriciously in failing to make an unconditional tender. The record reasonably supports the determination that there were substantial, reasonable, and legitimate questions as to the extent of Allstate’s liability and Vickie’s loss. See Louisiana Bag Company, Inc., 999 So.2d at 1114, Accordingly, 117the trial court did not err in denying recovery for penalties and attorney fees under Louisiana Revised Statutes 22:1892 and 22:1973.[3]
CONCLUSION
Finding no merit to the assignments of error, we affirm the trial court’s judgment entered on July 31, 2013 Costs of this appeal are assessed equally between the parties.
AFFIRMED.

. Although Vickie’s deposition is referenced in the first letter, the deposition was not introduced at trial in support of the bad faith claim.

. The transcript reflects that the trial court arrived at the total figure by multiplying "$67,600 [sic] times 38 months;” however, that explanation is either a typographical error or an error by the trial court in its reasons, as that calculation produces a total award of over $2,5005000.00, which has no rational basis in the record.

. The Lemoines also complain that Allstate did not attend Vickie’s deposition; however, neither Section 22:1892 nor 22:1973 impose an obligation on a UM insurer to attend a party's deposition. While information developed at a deposition may be relevant for determining whether an unconditional tender is due, the plaintiffs did not introduce Vickie’s deposition at trial, nor do they reference any particular testimony in the deposition in support of their bad faith claim.