STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 1213

KATHRYN M. FONTENOT

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
JIM ROGERS IN HIS OFFICIAL CAPACITY AS WARDEN
OF THE LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN
AND LT. THOMAS

*Judgment Rendered:*   APR 0 8 2022

* * * * * * * *

Appealed from the
18th Judicial District Court
In and for the Parish of Iberville
State of Louisiana
Case No. 74,450, Division D

The Honorable Elizabeth A. Engolio, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Jeff Landry<br>Attorney General<br>Amber Mandina Babin<br>Wm. David Coffey<br>Assistant Attorneys General<br>New Orleans, Louisiana<br><br>James L. Hilburn<br>Assistant Attorney General<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellants<br>State of Louisiana, through the<br>Department of Public Safety and<br>Corrections, Jim Rogers in his<br>official capacity as warden of the<br>Louisiana Correctional Institute for<br>Women, and Charles Thomas |
| Gary W. Bizal<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellee<br>Kathryn M. Fontenot |

* * * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**THERIOT, J.**

In this suit arising out of personal injuries sustained by an inmate, the defendants appeal a trial court judgment in favor of the plaintiff. For the reasons set forth herein, we amend the trial court judgment and, as amended, affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Kathryn M. Fontenot, an inmate in the custody of the Louisiana Department of Public Safety and Corrections at the Louisiana Correctional Institute for Women, filed a petition for damages on February 2, 2015, alleging that she sustained serious injuries on March 11, 2014, when she was knocked to the ground by a correctional officer, who was running to respond to a call for assistance. Fontenot's petition named the State of Louisiana through the Department of Public Safety and Corrections, Warden Jim Rogers, and Lieutenant Charles L. Thomas, III, the correctional officer who knocked Fontenot down, as defendants.

Following a stipulation that Fontenot's damages did not exceed $50,000.00, a bench trial was held on June 18, 2021. The parties stipulated to the medical expenses and exhibits, and testimony was presented from Fontenot, Lt. Thomas, and Lt. Anthony Ennis.

Fontenot testified that on March 11, 2014, she was fifty-eight years old and was standing in the inmate medication line when she heard someone yell "move." She turned and saw Lt. Ennis running. Fontenot explained that inmates were taught not to block the path of correctional officers, to follow instructions from officers, and to move out of the way of officers responding to emergency calls for assistance. However, Fontenot testified that she did not need to move in order to avoid Lt. Ennis, as he passed through the line of inmates four or five feet away from her. After Lt. Ennis passed through the area, Fontenot testified that she "looked and . . . didn't see nobody else and then when I turned back around again I

2

saw [Lt.] Thomas was pretty close, right there, and I just froze and then he hit me and I flew and hit the ground." Fontenot denied hearing any warning or instruction to move out of the way from Lt. Thomas and explained that by the time she saw him sprinting towards her, she had no opportunity to do anything to avoid the collision. Although Fontenot testified that she would have moved out of the way if there had been enough time, she also acknowledged that she did not know which direction she should have moved in to avoid the collision.

Fontenot testified that the collision with Lt. Thomas knocked her to the ground, where she landed on her left arm and shoulder. Following the accident, she was taken to the infirmary in a wheelchair by another inmate. Fontenot testified that she could not move her left arm after the fall, and she described her pain on the day of the accident as a ten out of ten.[1] No x-rays were taken on that day. She was given an arm sling, an ice pack, Ibuprofen, and a Toradol injection. Her arm was x-rayed on March 13, 2014, after which Dr. Johnny Prejean recommended an "urgent ortho referral." Fontenot testified that her pain continued to increase. On March 17, 2014, Fontenot reported to the infirmary, complaining of pain that she rated as 10 out of 10. On March 25, 2014, Fontenot was diagnosed with a "[c]omminuted fracture of the surgical neck of the left humerus with minimal displaced fragments involving the greater and lesser tuberosities with deformity." By late April 2014, Fontenot continued to complain of "throbbing achy pain," which she rated as an 8 out of 10. She continued experiencing pain and difficulty using her left arm, but was advised that surgery was not an option because of the amount of time that had passed since the injury and because of the location of the injury. In addition to pain, Fontenot testified that she required assistance with dressing and bathing due to reduced range of motion in her left arm. She began physical therapy on May 23, 2014, where she learned exercises to

---

[1] The medical records from the infirmary on this day state that Fontenot rated her pain as 8 out of 10.

3

perform on her own to help with her range of motion. She continued treating with the physical therapist at least through the end of 2014. Although it is not clear exactly when she stopped receiving physical therapy, she testified that she continued doing the exercises she was taught following her release from incarceration. In September 2014, she was advised to continue the restriction against weight-bearing on her left arm for three months. In October 2014, Fontenot continued to have discomfort and stiffness in her left arm and medical records show that she rated her pain as a 5 out of 10. Although she had initially been excused from her normal housekeeping work duties following the accident, her request to extend her restricted-duty status was eventually rejected on October 1, 2014, and she was required to start working in housekeeping again. Fontenot testified that in order to perform her housekeeping tasks, she often had to use both of her arms, which caused her increased pain. Following her release from custody in June 2015, Fontenot saw Dr. Thomas R. Lyons at the direction of her attorney. Dr. Lyons sent her for an MRI,[2] and he injected her shoulder on August 3, 2015 and again on October 2, 2015, in an attempt to relieve her pain. Fontenot testified that she did not get any relief from the injections. Dr. Lyons also recommended physical therapy, which Fontenot testified she was already doing at home twice a day, continuing through the date of trial, and reevaluation in four to six weeks. Fontenot did not return to Dr. Lyons after the October visit. Fontenot testified that, in her opinion, her arm improved to a point that was "as good as it was going to get" about a year after the accident. At the time of trial, over seven years after the accident, she testified that she still takes ibuprofen four times a day and cannot raise her left arm completely.

---

[2] On October 2, 2015, Dr. Lyons noted that an MRI scan of Fontenot's left shoulder was performed on September 4, 2015, which showed "evidence of proximal humerus fracture with intact rotator cuff" and "[m]ild acromioclavicular joint arthropathy."

Lt. Thomas testified that on the date of the accident, he received a call for assistance while eating breakfast. Lt. Thomas explained that calls for assistance do not give the nature of the situation; the control center just sends out a location and the officers are trained to "[s]top with what [they're] doing and go," "[g]et there with the most safe [sic] as possible, and . . . run." The reason for the call for assistance could be anything from a false alarm caused by an officer accidentally pressing his "beeper," an unruly inmate, or a stabbing. When Lt. Thomas received the call for assistance on March 11, 2014, he stood up and began running toward the unit requesting assistance. Lt. Ennis, who was standing nearby, began running in response to the call as well, but he was ahead of Lt. Thomas by "maybe five or six feet." Lt. Thomas testified that he heard Lt. Ennis yell "move," and the inmates standing in line moved aside to allow Lt. Ennis to pass through and then immediately went back to what they were doing. Lt. Thomas did not follow the same path Lt. Ennis took because there were "[t]oo many people there" obstructing the path. Instead, he approached the area in which Fontenot was standing in line, yelling "move, make a hole," and the line parted; however, when he was approximately two to two-and-a-half feet away, Fontenot stepped right in front of him. He was unable to avoid colliding with her, knocking her to the ground. When asked whether he believed Fontenot intentionally stepped into his path, Lt. Thomas testified that he could not think of any other reason besides defiance for Fontenot to step out in front of him as he approached, although he admitted that she appeared "startled" when she saw him approaching. Lt. Thomas testified that although he could have written Fontenot up for a disciplinary violation for defiance for interfering with a correctional officer's lawful duties, he did not do so because there was a lot going on that day and because Fontenot was injured. Aside from the instruction to "make a hole," Lt. Thomas acknowledged that he did not gesture or give any sort of instruction to let the inmates know which way they should move

5

to get out of his way. Lt. Thomas explained that the inmates should simply use their own judgment and get out of the way.

Lt. Ennis testified that he had no trouble passing through the line of inmates on March 11, 2014, and he did not witness the collision between Lt. Thomas and Fontenot. He testified that during his time as a correctional officer, when he responded to a call for assistance and encountered inmates standing in line, he would yell out commands, such as "get out of the way," and the inmates would disperse. Lt. Ennis testified that he had never knocked an inmate down while responding to a call for assistance.

The Unusual Occurrence Report prepared by Lt. Thomas on the date of the accident was also filed in evidence. In this report, Lt. Thomas stated, "I gave a loud verbal order for the offenders to move at this time [Fontenot] stepped slightly to her right side but appeared to be startled when I ordered the offenders to move and she stoped [sic] moving, I tried to get around her but when she stopped moving I ran into her."

After taking the matter under advisement, the trial court rendered judgment in favor of Fontenot and against DPSC, Warden Rogers, and Lt. Thomas, specifically finding that the cause of Fontenot's injuries was Lt. Thomas's negligence in running into her and rejecting the defendants' assertion that Fontenot purposely stepped into Lt. Thomas's path. The trial court awarded Fontenot general damages of $48,550.00 and past medical expenses of $1,450.00.

The defendants appealed, arguing that the trial court erred in failing to allocate any fault to Fontenot, in failing to reduce the award of damages due to Fontenot's failure to mitigate her damages, in awarding an excessive amount of general damages, and in casting Warden Rogers in judgment.

## DISCUSSION

Appellants' first assignment of error addresses the trial court's failure to allocate any percentage of fault to Fontenot, despite the fact that she stepped into Lt. Thomas's path. Louisiana Civil Code article 2323(A) provides as follows with regard to comparative fault:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

The trial court's allocation of fault is a factual determination. *Malta v. Herbert S. Hiller Corp.*, 2021-00209, p. 21 (La. 12/10/21), --- So.3d ---, ---, *reh'g denied*, 2021-00209 (La. 1/28/22). As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault; therefore, the trier of fact's allocation of fault is subject to the manifest error or clearly wrong standard of review. *Id.* In allocating fault between the parties, the trier of fact is bound to consider the nature of each party's wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed. *Aaron v. Exxon Mobil Corp.*, 2018-0476, p. 18 (La.App. 1 Cir. 12/27/18), 271 So.3d 205, 217-18, citing *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967, 974 (La. 1985). In assessing the nature of the parties' conduct, factors that may influence the degree of fault allocated include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any

7

extenuating circumstances that might require the actor to proceed in haste, without proper thought. *Aaron*, 2018-0476 at p. 18, 271 So.3d at 218. The allocation of fault is not an exact science or the search for one precise ratio; rather, it is the search for an acceptable range, and an allocation by the factfinder within that range cannot be clearly wrong. *Id.*

Here, the finder of fact rejected the assertion that Fontenot intentionally stepped in front of Lt. Thomas and found that she could not have known which way she should move in order to avoid Lt. Thomas, who was rapidly approaching. Although Lt. Thomas testified at trial that Fontenot stepped out in front of him at the last second, making it impossible for him to avoid hitting her, the Unusual Occurrence Report he prepared on the date of the accident actually corroborated Fontenot's trial testimony that she was startled and froze when she saw him rapidly approaching her and that there was no time for her to react to avoid the collision. Lt. Thomas testified that he made a decision while approaching at a sprint to cross the line of inmates in a different place than Lt. Ennis had, and acknowledged that the inmates could not read his mind to know which way to move to avoid him. Considering the particular facts of the case, we find that the record supports that the trial court was not manifestly erroneous or clearly wrong in finding Fontenot free from fault. This assignment of error has no merit.

In their second assignment of error, appellants argue that the trial court erred in failing to reduce the general damage award due to Fontenot's failure to mitigate her damages. Defendants argue that Fontenot failed to mitigate her damages by failing to follow Dr. Lyons's recommendation to repeat injections and to follow-up for reevaluation in four to six weeks.

A tort victim has a duty to take reasonable steps to mitigate damages. *Aisole v. Dean*, 574 So.2d 1248, 1253 (La. 1991). The victim need not make extraordinary efforts or do what is unreasonable or impractical in his efforts to

8

minimize the damages, but his efforts to minimize them must be reasonable and in accordance with the rules of common sense. *Sepulvado v. Turner*, 37,912, p. 10 (La.App. 2 Cir. 12/10/03), 862 So.2d 457, 463. The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense. *Lemoine v. Mike Munna, L.L.C.*, 2013-2187, p. 10 (La.App. 1 Cir. 6/6/14), 148 So.3d 205, 213.

As pointed out by Fontenot's appellate brief, the appellants' argument that Fontenot failed to mitigate her damages was raised for the first time on appeal. Although the events giving rise to Fontenot's alleged failure to mitigate damages had not yet taken place when the answers were filed in March 2015 (Fontenot saw Dr. Lyons in August and October 2015), appellants did not raise Fontenot's alleged failure to mitigate her damages in later pleadings or in their pretrial memorandum and did not raise the issue at trial. Further, they failed to put on any evidence that Fontenot's condition would have improved with continued treatment.

As a general rule, an appellate court will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. *Pinnacle Builders, Inc. v. John*, 2021-0335, p. 12 (La.App. 1 Cir. 12/22/21), --- So.3d ---, ---. For this reason, we decline to consider appellants' argument that Fontenot failed to mitigate her damages.

In their third assignment of error, the appellants argue that the trial court's general damages award of $48,550.00 was excessive and an abuse of discretion under the circumstances of the case.

It is well settled that a judge or jury is given great discretion in the assessment of quantum, of both general and special damages. La. C.C. art. 2324.1; *Guillory v. Lee*, 2009-0075, p. 14 (La. 6/26/09), 16 So.3d 1104, 1116. Furthermore, the assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact that is entitled to great deference

on review. *Wainwright v. Fontenot*, 2000-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74. The standard for appellate review of general damages is set forth in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La. 1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), wherein the Louisiana Supreme Court stated that the discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. The appellate court's initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. *Youn*, 623 So.2d at 1260. Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point that is reasonably within that discretion. *Id.*

Considering Fontenot's testimony regarding the severity and duration of her pain and the loss of mobility and strength in her left arm and shoulder and the medical evidence in the record, we simply cannot say that the trial court abused its great discretion in awarding general damages. This assignment of error lacks merit.

In their final assignment of error, appellants argue that the trial court erred in casting Warden Rogers in judgment, as the evidence shows that Warden Rogers was neither Lt. Thomas's employer nor his supervisor. Although Fontenot's petition alleges that Warden Rogers was negligent in his supervision and/or training of Lt. Thomas, no evidence was presented that Warden Rogers was Lt. Thomas's employer or was in any way responsible for training or supervising Lt. Thomas. Fontenot's appellate brief did not address this assignment of error, and counsel for Fontenot informed this Court during oral argument that Fontenot does not oppose the amendment of the trial court judgment to dismiss the claims against Warden Rogers. As such, we find that there is merit to this assignment of error,

and the June 25, 2021 trial court judgment is hereby amended to dismiss the action against Warden Rogers.

## CONCLUSION

For the reasons set forth herein, the June 25, 2021 trial court judgment is amended solely to dismiss all claims against Warden Jim Rogers. As amended, this judgment is affirmed. Costs of this appeal in the amount of $4,706.13 are assessed to defendants-appellants, the State of Louisiana through the Department of Public Safety and Corrections and Lieutenant Charles L. Thomas, III.

**AMENDED, AND AFFIRMED AS AMENDED.**